Mouryce PRICE, Delmas Price and Bobbye Price Fancher, sole surviving Heirs of the Estate of Tom Price, Deceased,

v.

UNITED STATES of America.

Civ. A. No. CA-3-77-1033-G.

United States District Court,
N. D. Texas,
Dallas Division.

April 24, 1979.

Alan L. Murray, Dallas, Tex., for plaintiffs.

Kenneth J. Mighell, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., William W. Guild, Tax. Div., Howard A. Weinberger, Tax Div., Dallas, Tex., for defendant.

MEMORANDUM OPINION AND ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

This suit for refund of $6,998.39 in federal estate taxes, submitted to this court on stipulated facts, requires this court to resolve difficult question of first impression concerning certain provisions of the Texas Probate Code and their relationship to the federal tax code. The undisputed facts are as follows:

Tom and Bertha Price, husband and wife, executed reciprocal wills in which each devised their entire estate to the other and appointed the other executor of the estate. Together they held, near the time of their deaths, in excess of $100,000 worth of assets, all or substantially all of which was community property.

Bertha Price died on March 7, 1974. Her gross estate was $58,247.50. Six weeks later (on April 16, 1974), during which time Bertha's will was not offered for probate, Tom Price died. His gross estate, excluding any property that may have belonged to him by virtue of inheritance under Bertha's will, was $56,417.73.

After a federal estate tax return was filed by Tom's estate showing no tax due on the basis that the estate consisted of $56,-417.73 (there was at the time of Tom's death no estate tax on estates valued at less than $60,000), the government assessed an estate tax deficiency against Tom's estate of $6,106.46 plus $815.27 in interest on the basis of the government's conclusion that Tom's estate included Bertha's property inherited from her under her will. Tom's estate paid the assessment, as well as $76.66 in additional interest, and, after unsuccessfully contesting the assessment with the IRS, filed this suit. The plaintiffs are the three children of Tom and Bertha Price (and the sole surviving heirs of Tom Price) and Tom's estate.

The line of dispute between the parties is clearly drawn. The plaintiffs claim that, because Bertha's will was never probated (and they have decided that it never will be probated), Bertha's property never passed to Tom under her will but rather passed to them by intestate succession. Consequently, they argue, Tom's estate consisted of less than $60,000 and should not have been liable for any estate tax. The government, on the other hand, contends that Bertha's property vested in Tom immediately upon her death, regardless of whether her will has been or ever will be probated, and that Tom's estate therefore included property inherited from Bertha, which made it worth more than $60,000 and hence subject to federal estate tax.

Resolution of this dispute turns on interpretation of two provisions of the Texas Probate Code and their relationship to the federal tax code.

Section 37 of the Texas Probate Code provides in relevant part as follows:

When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate and the donees of such powers . . . . Tex.Prob.Code Ann. § 37 (Vernon Supp.1979).

Section 94 of the Texas Probate Code provides in part:

[N]o will shall be effectual for the purpose of proving title to, or the right to the possession of, any real or personal property disposed of by the will, until such will has been admitted to probate. Tex.Prob.Code Ann. § 94 (Vernon 1956).

The question here is whether, *for federal estate tax purposes*, Bertha's estate vested in Tom immediately upon her death under section 37, or whether, under section 94, Bertha's will was ineffectual to pass title in her estate to Tom because it has never been probated. This precise question has not been answered in any reported decision.

An attempt to resolve the issue must begin with an examination of the interplay between federal and state law and the relationship of each to the issue presented. The ultimate question to be decided is whether, under 26 U.S.C. § 2033, Tom's estate included the property that Bertha left at her death. That is, of course, a federal question. The resolution of that question, however, depends upon whether under state law Bertha's property was part of Tom's estate. The overall question, then, is whether state law gave Tom such an interest in Bertha's property as to render her property part of Tom's estate for purposes of the federal estate tax. *See Aldrich v. United States*, 346 F.2d 37 (5th Cir. 1965).

The starting point for analysis is the Texas Probate Code. Section 37, read alone, would certainly compel a decision in the government's favor. It is important to decide, then, to what extent section 94 limits section 37.

The plaintiffs argue that the government is, in effect, attempting to prove that Tom, at his death, had title to Bertha's property by offering her unprobated will. They ar-

gue that section 94 specifically precludes proof of title by a will that has not been probated. The plaintiffs also argue that, since the will will never be probated, its lawfulness will never be determined and that, consequently, it can never be effective to pass title since it will never be known whether, if offered for probate, it would have been accepted. Finally, the plaintiffs contend that section 37 is controlled by section 94, and that the combined effect of these sections is that once a will is probated the vesting of title relates back to the moment of the testator's death.

The government's argument is that section 94 creates no interests but, rather, simply provides a procedure for proof of property interests obtained under a will. In support of this argument the government points out that section 94 is based on section 85 of the Model Probate Code, the official commentary to which provides that

Statutes of this general character are common. Some even go so far as to say that no will shall be effectual to pass real or personal estate until it has been admitted to probate. But it is uniformly held that this is a matter of production of evidence and does not prevent the passing of the title at the time of the testator's death.

It bears repeating that no reported Texas decision has addressed the problem of the interplay of these two sections of the Probate Code. The Fifth Circuit, has, however, in similar contexts, addressed similar provisions of Georgia and Florida law. Those decisions bear close scrutiny here.

In *Jenkins v. United States*, 428 F.2d 538 (5th Cir. 1970), the court was called upon to decide whether a power of appointment devised by Ada Jenkins to her sister, Martha Jenkins, was part of Martha's estate for estate tax purposes though, at the time of Martha's death, Ada's will had not been probated. While specific provision is made with regard to powers of appointment in the Internal Revenue Code, 26 U.S.C. § 2041, the reasoning in *Jenkins* is applicable to this case insofar as the court there focused upon the effect of a failure to pro-

bate the will upon the question of whether for estate tax purposes the property (the power of appointment) had passed under the will; the specific provisions of 26 U.S.C. § 2041 did not affect the court's analysis of this issue.

The court turned to Georgia law (the domicile of the deceased) to determine the "character of the interest which Martha O. Jenkins received at the moment of her sister's death." 428 F.2d at 548. Georgia probate law contained provisions similar to sections 37 and 94 of the Texas Probate Code. Section 113–105 of the Georgia Code provided that

A will shall take effect instantly upon the death of the testator, however long the probate may be postponed.

Section 113–801 of the Georgia Code provided that

All property . . . being assets to pay debts, no devise or legacy passes the title until the assent of the executor is given to such devise or legacy.

The court held that the power of appointment could have been exercised by Martha before her death and was part of her estate upon her death. Several portions of the court's reasoning are worth quoting.

It is undisputed that [Martha] did not receive a fully perfected legal *title* to the property involved, for under Georgia law title does not vest in a devisee until the executor . . . gives his assent . . . . The purpose of this delay in the vesting of title, however, is not to cut off or diminish any beneficial interest of any devisee. Georgia has merely established a method to insure that the debts of the estate are paid, a procedural device to protect the creditors. . . .

Although a Georgia devisee does not receive a perfected *title* at the moment of the testator's death, he does receive the essence of his interest under the will. The Georgia courts have said that a devisee receives an "inchoate title" subject to perfection . . . . Thus the process of probating a will in Georgia is essentially a formal validation of the property interests which came into existence upon

the death of the testator [citation omitted]. In Georgia, as in other jurisdictions, probate is title-accommodating rather than interest-creating . . . .
The fact that [Martha] did not then possess a fully perfected record title is not controlling for estate tax purposes. 428 F.2d at 548.

A similar problem was confronted, and resolved in the same way, in *Estate of Bagley v. United States*, 443 F.2d 1266 (5th Cir. 1971). That case, too, involved a power of appointment. The power was devised by Mr. Bagley to his wife. While husband and wife died simultaneously, their wills provided that in such event Mrs. Bagley would be deemed to have survived her husband, and a state court had entered a decree to that effect. The court held that the value of the power of appointment was includable in Mrs. Bagley's estate for estate tax purposes. The decision was based largely on the *Jenkins* decision, the court reasoning that under Florida law, as under Georgia law, the act of probating a will is title-accommodating and not interest-creating. The court did, however, appear to restrict the scope of the *Jenkins* decision to cases where the will had eventually been probated.

> In sum, the power of appointment, like a legacy or devise, is inchoate pending probate and dates back to the date of death upon probate. This is the holding of *Jenkins* and it is controlling here. The power of appointment . . . was created immediately upon the death of the husband, subject to later perfection by probate. 443 F.2d at 1269.

If the plaintiffs are to prevail here, they must distinguish *Jenkins* and *Bagley*. One possible ground of distinction—that those cases, unlike this, involved powers of appointment for which specific provision is made in the Internal Revenue Code—is not, as noted above, a significant distinction with regard to the issue involved here. The plaintiffs would distinguish the cases on the ground that, whereas here Bertha's will will never be probated, in *Jenkins* and *Bagley* the wills were eventually probated. The

distinction is factually correct; its legal effect must be explored.

The plaintiffs contend that the government, in urging that Tom's estate included property inherited from Bertha, is in effect attempting to establish that Tom had title to the property. The plaintiffs argue that, under section 94, an unprobated will is ineffectual to prove title. They concede that, if the will were ever probated, the vesting of title in Tom under Bertha's will would relate back under section 37 to the time of Bertha's death.

■ The government, however, is not seeking to prove Tom's title to the property in the sense contemplated by section 94 of the Texas Probate Code; it is simply contending that Tom had sufficient rights in Bertha's property as to justify inclusion of that property as part of his estate for purposes of estate tax assessment. Section 94 was apparently enacted with a view toward title disputes. In that sense it is title-accommodating, like the Georgia statute considered in *Jenkins*. It is virtually certain that section 94 was not intended to determine ownership rights for purposes of determining federal estate tax liability, even assuming that the Texas legislature had power to directly and purposefully affect the federal estate tax. Thus the relevance of section 94 here must be questioned.

■ The *Jenkins* case makes it clear that, immediately upon Bertha's death, Tom had "a genuine beneficial interest" in her property despite the fact that her will was not probated. Whether that interest was sufficient to prove title in a title dispute is not the precise question that must be decided here. The question here is whether Tom had at his death a sufficient interest in Bertha's property that her property was includable in his estate for federal estate tax purposes. The *Jenkins* decision would seem to answer that latter question in the affirmative. The language of the *Jenkins* case does not suggest that the result was affected by the fact that the will was eventually probated. To the extent that the *Bagley* decision suggests such a limitation on *Jenkins*, it appears to be based on the

peculiarities of Florida law and, arguably, appears to misread *Jenkins*.

█ The plaintiffs argue that, since Bertha's will will never be probated, there is the possibility that, if offered for probate it would be denied and that, consequently, it will never be known if the will was valid. It is possible, perhaps even likely, that the results in *Jenkins* and *Bagley* would have been different if the wills involved there had been denied probate or had been invalidated. But the plaintiffs here have offered absolutely no reason why Bertha's will might be denied probate. This court need not decide what the rule would be with regard to a will ultimately denied probate; we are dealing here with a will never offered for probate. The intent of Bertha Price, as expressed in her will, was that all her property should pass to her husband. The plaintiffs would attempt to override that intention (admittedly, in the circumstances of this case, that intention became irrelevant upon Tom's death) by refusing to offer the will for probate. It is doubtful that Congress intended the reach of the estate tax to turn on such post mortem decisions not to probate a will, or on groundless speculation that the will, if offered for probate, might be found invalid. This court holds, then, that an unprobated but apparently valid will left by a Texas citizen is effective to convey sufficient interest in property devised by the will as to render that property includable in the devisee's estate *for estate tax purposes.*[1]

---

1. This decision does not achieve, and does not attempt to achieve any final resolution of apparent conflicts between sections 37 and 94 of the Texas Probate Code. That is a problem that will ultimately have to be resolved by the courts of Texas. This court merely holds that, where a will has not been probated but there is no indication that, if offered for probate it would be denied probate, sufficient interest in property devised by the will passes to the devisees under section 37 of the Texas Probate Code as to permit inclusion of that property in the estate of a devisee for purposes of assessing federal estate tax. This case does not deal with a disclaimer of interest.